**Croushore v. Buchanan Ingersoll P.C.**

C.P. of Allegheny County, no. GD96-7690.

*Nancy Jean LaMont,* for petitioner.
*Herbert Bennett Conner,* for respondent.

WETTICK, *J.,* August 2, 1996—Ronald F. Croushore is a managing shareholder, director, president, and employee of PPR Realty Inc. Kathy McKenna is a 10 percent shareholder and an employee of PPR Realty Inc.

Ms. McKenna filed with the American Arbitration Association a demand for arbitration dated January 25, 1996, raising claims arising out of alleged breaches of various agreements. Mr. Croushore is named as a respondent in the demand for arbitration.

Ms. McKenna attached to the demand for arbitration an agreement which contains an arbitration clause. The arbitration clause provides for the parties to submit to arbitration in accordance with the rules of the American Arbitration Association the following matters:

"(b) *'Arbitrable matter'* shall mean and include:

"(i) Any and all alleged violations under paragraphs 8(aa), 8(bb), 8(cc) and 8(dd);

"(ii) Any and all disputes as to shareholders' compensation;

"(iii) Any and all claims of a violation of paragraph 12 as to any sale or transfer or proposed sale or transfer of shares;

"(iv) Any and all claims of a violation under paragraph 15 or under paragraph 16;

"(v) Any and all claims of a violation under paragraph 17(c); and

"(vi) As set forth in paragraph 18(e) and any and all claims of non-compliance with the procedures set forth in paragraph 18(e)."

Mr. Croushore does not challenge Ms. McKenna's assertion that the parties agreed to arbitrate the claims described in the demand for arbitration.

Ms. McKenna's demand for arbitration identifies as her counsel Herbert Bennett Conner, Esquire, of the law firm of Buchanan Ingersoll P.C. Attorney Stewart B. Barmen, Esquire, of Buchanan Ingersoll, previously represented Mr. Croushore with respect to several legal matters.

Following Ms. McKenna's filing of the demand for arbitration, counsel for Mr. Croushore contacted Buchanan Ingersoll to request that this law firm withdraw from Ms. McKenna's representation on the ground that it has a direct conflict. Buchanan Ingersoll rejected the

request, stating that Mr. Barmen's representation of Mr. Croushore involved matters that are unrelated to the subject matter of the pending dispute.

Mr. Croushore then filed in this court a petition for disqualification of Buchanan Ingersoll. The petition sets forth the dates during which Mr. Barmen allegedly provided legal representation to Mr. Croushore together with a brief summary of matters that Mr. Croushore allegedly discussed with Mr. Barmen. The petition avers that Mr. Croushore discussed with Mr. Barmen matters that are directly at issue in the arbitration action.[1] Mr. Croushore seeks a court order directing Mr. Conner and the law firm of Buchanan Ingersoll to withdraw their appearance in the arbitration action.

Buchanan Ingersoll has filed preliminary objections to the petition for disqualification which is the subject of this opinion and order of court. The preliminary objections state that the motion to disqualify counsel should be denied because the arbitrators, rather than this court, should decide whether Buchanan Ingersoll may serve as counsel for Ms. McKenna in the underlying arbitration matter.[2]

Pennsylvania case law holds that a court shall give full recognition to agreements to submit disputes to arbitration. Contracts providing for the arbitration of

---

1. Buchanan Ingersoll has filed a response to the petition for disqualification which denies critical allegations in Mr. Croushore's petition. Consequently, the merits of the petition for disqualification cannot be resolved without evidence.

2. Buchanan Ingersoll has chosen not to challenge the petition on the ground that Mr. Croushore has instituted a proceeding through a petition rather than a complaint. Consequently, I need not decide whether the disqualification request should have been raised in a different fashion. See *e.g., Maritrans GP Inc. v. Pepper, Hamilton & Scheetz,* 529 Pa. 241, 602 A.2d 1277 (1992).

disputes are viewed favorably. *Ambridge Borough Water Authority v. Columbia,* 458 Pa. 546, 549, 328 A.2d 498, 500 (1974). However, a court shall not find that the parties agreed to submit a dispute to arbitration in the absence of language showing such an agreement in a clear and unmistakable manner. *PBS Coal Inc. v. Hardhat Mining Inc.,* 429 Pa. Super. 372, 378, 632 A.2d 903, 905 (1993); *Hassler v. Columbia Gas Transmission Corp.,* 318 Pa. Super. 302, 307, 464 A.2d 1354, 1356-57 (1983). When there is no agreement to arbitrate an issue, a party cannot be compelled to arbitrate. *Shapiro v. Keystone Insurance Co.,* 384 Pa. Super. 397, 558 A.2d 891 (1989). Where, as in the present case, the parties have entered into an agreement to submit disputes to arbitration, the controlling issue is whether the dispute in question falls within the purview of the agreement. *Giant Markets Inc. v. Sigma Marketing Systems Inc.,* 313 Pa. Super. 115, 121, 459 A.2d 765, 768 (1983).

Mr. Croushore cites the case law holding that a party cannot be compelled to arbitrate an issue in the absence of language showing that the parties intended for arbitrators, rather than the court, to resolve the issue. Mr. Croushore correctly states that the parties' agreement does not include a provision expressly authorizing the arbitrators to decide a petition to disqualify counsel for the alleged breach of counsel's fiduciary duties owed to another party to the arbitration. This means, according to Mr. Croushore, that Mr. Croushore is entitled to a judicial resolution of the disqualification issue.

The difficulty with Mr. Croushore's position is that under Pennsylvania case law in the absence of language to the contrary, a party is deemed to have given ar-

bitrators the authority to decide any collateral matter that is related to a substantive dispute that is arbitrable. *Giant Markets Inc. v. Sigma Marketing Systems Inc., supra* at 124, 459 A.2d at 769.

In *Kardon v. Portare,* 466 Pa. 306, 353 A.2d 368 (1976), the arbitration agreement provided that the American Arbitration Association would determine all disputes regarding forfeiture of an employee's share of a profit-sharing plan. The arbitration agreement gave any party the right to appeal to the American Arbitration Association from a decision rendered by a review committee within 10 days after the date of the decision of the review committee.

An employee challenged the decision of the plan to forfeit his share of the profit-sharing plan. The trustees of the profit-sharing plan prevailed before a review committee. The employee filed a demand for arbitration with the American Arbitration Association. The trustee then filed a complaint in equity seeking to enjoin the arbitration on the ground that the appeal was not properly and timely filed. The employee sought dismissal of the complaint in equity on the ground that this was a dispute that fell within the scope of the arbitration agreement.

Although the arbitration agreement did not contain language providing for the American Arbitration Association to decide whether the party seeking arbitration had filed a proper and timely appeal, the Supreme Court of Pennsylvania held that unless the arbitration agreement specifically limits the arbitrator's jurisdiction, an agreement giving jurisdiction to the arbitrator to decide the substantive issue gives the arbitrator the authority

to decide "procedural" questions which grow out of the arbitrable substantive issue. *Id.* at 310, 353 A.2d at 370. Consequently, the court sustained the preliminary objections requesting dismissal of the complaint to enjoin arbitration.

The *Kardon* opinion relied on *Flightways Corp. v. Keystone Helicopter Corp.,* 459 Pa. 660, 331 A.2d 184 (1975). In that case, the plaintiff filed an action in equity to cancel an agreement on the ground of fraudulent inducement and mutual mistakes of fact. The agreement contained an arbitration clause which provided for the parties to arbitrate any controversy or claim arising out of or relating to the agreement. The lower court directed the parties to proceed to arbitration pursuant to this arbitration clause. The Supreme Court of Pennsylvania affirmed the lower court decision, holding that an arbitration clause "cannot be circumvented by an allegation that the contract was void ab initio because of fraud in the inducement or mutual mistake." *Id.* at 663, 331 A.2d at 185. The court stated that:

"When one party to an agreement to arbitrate seeks to enjoin the other from proceeding to arbitration, judicial inquiry is limited to the questions of whether an agreement to arbitrate was entered into and whether the dispute involved falls within the scope of the arbitration provision. . . . Thus a party who can establish that he did not agree to arbitrate, or that the agreement to arbitrate, limited in scope, did not embrace the disputes in issue, may be entitled to enjoin an arbitration proceeding. . . . Here, however, there is no question but that the appellant is a party to an agreement to arbitration of '[a]ny controversy or claim arising out of or relating to this agreement, or the alleged breach

thereof.' Broader language would be difficult to contrive. It cannot be circumvented by an allegation that the contract was void ab initio because of fraud in the inducement or mutual mistake." *Id.* (citations omitted) Also see, *Ambridge Borough Water Authority v. Columbia, supra* at 552, 328 A.2d at 501-502; *Zanella v. Lybarger,* 46 D.&C.3d 95 (Allegheny County 1986).

The Pennsylvania Superior Court recognized the authority of an arbitrator to decide collateral issues in *Giant Markets Inc. v. Sigma Marketing Systems Inc., supra,* where the court said:

"The parties, by their mutual agreement, have the ability to structure in advance of the hearing the arbitrator's authority. In absence of some limitation specified by the parties, the arbitrator has the authority to decide all matters necessary to dispose of the disputed claim subject to arbitration." *Id.* at 124, 459 A.2d at 770.

It is Buchanan Ingersoll's position that disqualification is a collateral matter. The parties' arbitration agreement does not limit the authority of the arbitrators to hear a disqualification motion that arises out of a dispute that the parties agree to submit to arbitration. Consequently, under the *Kardon v. Portare* line of cases, I should sustain Buchanan Ingersoll's preliminary objections to Mr. Croushore's petition for disqualification on the ground that this is a matter that falls within the scope of the arbitration agreement.

I am rejecting Buchanan Ingersoll's argument because the Pennsylvania courts do not view a disqualification request based on the breach of a fiduciary obligation as strictly a matter that is collateral to the underlying

dispute. A former client who claims that an attorney's representation of a subsequent client constitutes an impermissible conflict of interest has the right to obtain a court order compelling disqualification through an independent action that does not arise out of underlying proceedings. *Maritrans v. Pepper, Hamilton & Scheetz, supra; Adler, Barish, Daniels, Levin and Creskoff v. Epstein,* 482 Pa. 416, 435, 393 A.2d 1175, 1185 (1978); *American Dredging Co. v. City of Philadelphia,* 480 Pa. 177, 189, 389 A.2d 568, 576 (1978) (dissenting opinion); *Slater v. Rimar Inc.,* 462 Pa. 138, 145-46, 338 A.2d 584, 591 (1975). The justification for allowing immediate judicial consideration of a claim that an attorney is breaching a duty of undivided loyalty owed to a former client is the protection of attorney confidences. An attorney-client relationship requires that clients "feel secure that everything they discuss with counsel will be kept in confidence" *(Maritrans v. Pepper, Hamilton & Scheetz, supra* at 254, 620 A.2d at 1283); it is the duty of the courts "to be watchful and industrious" in seeing that "confidence thus reposed shall not be used to the detriment or prejudice of the rights of the party bestowing it." *Id.,* quoting *Stockton v. Ford,* 52 U.S. (11 How.) 232, 247 (1850).[3]

---

3. In *Maritrans v. Pepper, Hamilton & Scheetz, supra,* former clients brought an equity action to enjoin their former law firm from continuing to represent competitors of the former clients in matters that were substantially related to the matters in which the law firm had represented plaintiffs. The law firm defended the action on the ground, inter alia, that plaintiffs' competitors were represented by different attorneys within the law firm whom the law firm then isolated from the attorneys who had represented plaintiffs *(i.e.,* the Chinese Wall defense). The Pennsylvania Supreme Court found that the law

In determining whether a matter must be submitted to arbitration, a court shall look to the intent of the parties. *Giant Markets Inc. v. Sigma Marketing Inc., supra.* Parties intend to submit to arbitration any matter that would ordinarily be considered only by the body deciding the underlying substantive claim in the proceedings involving this underlying claim. Since courts provide protections to a former client against a former attorney's breach of a fiduciary duty in proceedings that are outside of the underlying dispute, a disqualification request based on the breach of a fiduciary duty is not a matter that is merely ancillary to the underlying dispute. Consequently, by agreeing to submit a dispute to arbitration, a party has not given up its right to seek judicial review of its claims that a former attorney or former law firm is breaching fiduciary duties owed to the party, as a former client.

I recognize that any ruling that allows a party to seek judicial review of a matter that has any relationship to an arbitration proceeding may interfere with the purposes of arbitration—a prompt and inexpensive resolution of disputes which parties have agreed to submit to arbitration. However, as I discussed, disqualification

---

firm had breached its fiduciary duty of undivided loyalty to plaintiffs by representing plaintiffs' competitors in a substantially related matter and held that an injunction barring the law firm from representing plaintiffs' competitors was a proper remedy for the breach. The injunction issued without a finding that the lawyers representing the competitors had used any information that the attorneys representing plaintiffs had obtained through this representation to the disadvantage of plaintiffs; the court said that equitable relief is appropriate "to prohibit a potential conflict of interest from resulting in harm to appellant Maritrans." *Id.* at 259, 602 A.2d at 1286.

based on an alleged breach of a fiduciary duty has in Pennsylvania law an importance that extends beyond the fair resolution of the underlying dispute. Furthermore, the arbitration proceedings cannot go forward until the disqualification claim based on the alleged breach of a fiduciary duty is resolved, regardless of whether its resolution is a matter for the arbitrators or the court; and disqualification is a matter that can be promptly resolved through judicial proceedings under the procedures set forth in Pa.R.C.P. nos. 206.1-206.7. (See Rule 206.5(a)(3) which allows a court to utilize the procedures prescribed in the rules governing petitions whenever this will serve the interests of justice.)

My ruling is limited to a disqualification request based on an alleged breach of a fiduciary duty. The rationale for my ruling has no applicability to a motion seeking to disqualify counsel on any other basis. For example, the issue of whether an attorney who will be a witness in an arbitration proceeding may represent a party in the arbitration proceeding does not involve a breach of a fiduciary obligation. Consequently, the case law that I cite in support of the dismissal of Buchanan Ingersoll's preliminary objections would not be applicable.

Also, this case involves a disqualification request made prior to the completion of the selection of the arbitrators and the scheduling of any proceedings before the arbitrators. A party who files a disqualification request with the court after participating in arbitration proceedings will be faced with the claim that it has waived its objections to allowing the arbitrators to consider the disqualification request because of its failure to seek court involvement at the earliest possible time.

My discussion has not referred to any Pennsylvania cases that have addressed this issue because neither the parties nor I have found any Pennsylvania case law that has addressed this issue. My staff, however, found a limited number of cases in other jurisdictions that have addressed this issue.[4]

In *Bidermann Industries Licensing Inc. v. AVMAR N.V.,* 173 A.D.2d 401, 570 N.Y.S.2d 33 (Supreme Ct., Appellate Division, 1st Dept. 1991), the Appellate Division of the New York Supreme Court ruled that an application to disqualify an adversary's counsel in an arbitration matter was within the exclusive jurisdiction of the courts. In its memorandum decision the court said:

"We have held matters of attorney discipline are beyond the jurisdiction of arbitrators. Issues of attorney disqualification similarly involve interpretation and application of the Code of Professional Responsibility and Disciplinary Rules, as well as the potential deprivation of counsel of the client's choosing, and cannot be left to the determination of arbitrators selected by the parties themselves for their expertise in the particular industries engaged in." *Id.* at 34. (citations omitted)

In *Levin v. Ripple Twist Mills Inc.,* 416 F. Supp. 876 (E.D. Pa. 1976), the court denied the plaintiff's motion to disqualify the defendant's counsel and to stay arbitration. The court, with respect to the disqualification motion, stated that if "there had been a normal

4. The research for this opinion was performed by Heather R. Ercolani, a second-year law student at the University of Pittsburgh Law School, who is working as a full-time, unpaid summer legal intern in this office.

attorney-client relationship between [defendant's counsel and the plaintiff] our analysis now would be at an end and we would have to grant the disqualification motion." *Id.* at 885. The court, however, never discussed why a court rather than the arbitrators, should be addressing the disqualification motion.

*In the Matter of the Arbitration Between R3 Aerospace Inc. and Marshall of Cambridge Aerospace Ltd.,* no. 96 Civ. 1171, 1996 U.S. Dist. LEXIS 7490 (S.D.N.Y. May 29, 1996), Marshall had removed to the Federal District Court a proceeding which R3 Aerospace had filed in the Supreme Court of New York seeking to disqualify a law firm from representing Marshall in an arbitration proceeding because of alleged violations of New York's Code of Professional Responsibility and Disciplinary Rules. The removal was apparently based on Marshall's claim that the disqualification proceeding related to the parties' arbitration agreement. R3 Aerospace requested the federal court to remand the proceeding to state court on the ground that the subject matter of the dispute in state court (the removal of counsel) was not related to the arbitration agreement. The Federal District Court, citing *Bidermann,* ruled in favor of R3 Aerospace. It remanded the matter to the state court on the ground that "this dispute cannot be said to relate to the agreement within the meaning of the convention because attorney disqualification is not an arbitrable issue." *Id.* at *12.

In *Hibbard Brown & Company Inc. v. ABC Family Trust,* no. 91-1225, 1992 U.S. App. LEXIS 6469 (4th Cir. April 8, 1992), the district court had refused to reach the merits of the disqualification claim because the decision would be more appropriately made after

the full factual record was developed, assuming the district court even had jurisdiction. *Id.* at *5. The court of appeals affirmed the district court's dismissal of the motion to disqualify counsel in the arbitration proceedings on the ground that the district court did not abuse its discretion. The court noted that "a decision on disqualification by the district court at this time could have the result of interfering with the arbitration proceedings." *Id.* at *10.

None of this case law is particularly helpful in deciding whether Mr. Croushore's petition is governed by the Pennsylvania case law holding that arbitrators shall decide disputes ancillary to the resolution of the underlying arbitrable issues or whether Mr. Croushore's petition should be viewed as a matter for which the parties may seek a judicial determination. For the reasons set forth in this opinion, I do not believe that a party who agrees to submit particular disputes to arbitration is also agreeing to have the arbitrators provide the only protection to that party from an attorney's alleged breach of a fiduciary duty.

For these reasons, I enter the following order of court:

## ORDER

On August 2, 1996, it is hereby ordered that:

(1) respondent's preliminary objections to petitioner's petition for disqualification are overruled;

(2) the petition for disqualification shall be governed by Pa.R.C.P. no. 206.1 et seq.; and

(3) it appearing that Buchanan Ingersoll has already filed a response to the petition for disqualification, it is hereby ordered that depositions shall be completed

within 30 days, briefs on the merits of the disqualification petition shall be filed by the petitioner within 40 days and by the respondent within 50 days, and that an argument on the petition for disqualification shall be held on September 30, 1996 at 2 p.m.