In the Matter of the Arbitration Between MUNICH REINSURANCE AMERICA, INC., f/k/a American Reinsurance Company, Petitioner,

v.

ACE PROPERTY & CASUALTY INSURANCE CO., Respondent.

No. M–82 (HB).

United States District Court, S.D. New York.

April 10, 2007.

## OPINION & ORDER

BAER, District Judge.

Petitioner Munich Reinsurance Company of America ("Munich Re") filed a Petition for the Appointment of an Umpire in connection with a pending arbitration with Respondent ACE Property & Casualty Insurance Company ("ACE"). ACE argues that such appointment would be improper at this time in light of the civil action in Pennsylvania which seeks disqualification of Munich Re's counsel, Saul Ewing, on the basis of a conflict of interest. Munich Re's petition is DENIED.

## I. FACTUAL BACKGROUND/PROCEDURAL POSTURE

Munich Re (America) is a reinsurance company with its principal place of business in New Jersey. Decl. of Seth Goodman in Support of Opp. to Munich Re's Petition to Appoint an Umpire ("Goodman Decl."), Ex. 9 at ¶ 3. ACE is an international insurance and reinsurance company with its principal place of business in Pennsylvania. *Id.* at ¶ 1. Saul Ewing LLP is a law firm with its principal place of business in Pennsylvania. *Id.* at ¶ 2.

The arbitration, broadly speaking, concerns ACE's alleged obligations as a reinsurer to Munich Re. ACE asserts that Munich Re has been overcharging ACE in conjunction with its obligations as a reinsurer under a reinsurance contract (the "Contract"). Munich Re denies the allegation and alleges that ACE owes the full amount it was invoiced. Under the Con-

tract, the parties agreed to arbitrate "any irreconcilable dispute ... in connection with [the] Contract". Contract, Article XV (a). The Contract states that any arbitration will be held in New York. *Id.* at (b).

On January, 26, 2006, counsel for Munich Re made formal demand for arbitration pursuant to Article XV of the Contract and named its party-appointed arbitrator. On August 4, 2006, ACE responded and named its party-appointed arbitrator. On September 8, 2006, the respective party-appointed arbitrators reached an agreement on the pool of potential umpires and prepared a "mutually agreeable umpire questionnaire." Munich Re alleges ACE refused to answer certain questions about its affiliates, subsidiaries and related companies in an attempt to delay the arbitration. In November 2006, ACE demanded that Saul Ewing, counsel for Munich Re, voluntarily withdraw from the representation of Munich Re in the arbitration because he had previously represented ACE and possessed potentially prejudicial information. Saul Ewing refused and six months after the original demand for arbitration, on February 5, 2007, ACE filed an action in Pennsylvania's Court of Common Pleas to disqualify Saul Ewing. Munich Re filed this Petition for Appointment of an Umpire with this Court on February 28, 2007 which would, in their view, have moved this matter forward. I heard oral argument on March 27, 2007.

## II. STANDARD

9 U.S.C. § 5 authorizes this Court to appoint an umpire:

> If in the agreement provision be made for a method of naming or appointing an ... umpire, such method shall be followed; but if no method be provided

therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of ... umpire ... then upon application of either party to the controversy, the Court shall designate an appoint an ... umpire, ... who shall act under the agreement with the same force and effect as if he or they had been specifically named therein.

See also *AIG Global Trade & Political Risk Ins. Co. v. Odyssey Am. Reinsurance Corp.,* No. 05–CV–9152, 2006 U.S. Dist. LEXIS 73258, at \*16 (S.D.N.Y. Sept. 21, 2006) (explaining that a district court has the authority under 9 U.S.C. § 5 to select an umpire if there is a 'lapse' in the naming of an umpire). The Contract also provides a method for appointment of an umpire by the party-appointed arbitrators in conjunction with the parties themselves. *See* Contract, Article XV (b).

### III. DISCUSSION

Neither party disputes the appropriateness of arbitration as a forum for resolution of the Contract dispute. Rather, ACE submits that this Court should deny the petition, or in the alternative stay it, pending a decision from the Pennsylvania court on its motion for disqualification. Munich Re, in turn, contends that this Court should avoid further delay and appoint an umpire because the issue of disqualification is properly within the purview of the arbitration panel and incidental to the resolution of the underlying dispute. Further, Munich Re submits that ACE has three options all of which will be available following the appointment of an umpire: (1) file a preliminary injunction in Pennsylvania to expedite the proceeding; (2) argue the case for disqualification before the arbitration panel; or (3) raise the disqualification issue at the conclusion of the arbitration by means of a motion to vacate.

The central issue before me is whether the appointment of an umpire by the Court would move the matter forward despite the pending Pennsylvania action. Preliminarily, and perhaps dispositive, is whether the issue of disqualification is a matter for the arbitration panel or the court, a matter not free from doubt amongst the Circuits.

■ While arbitration, as a general matter, is a favored form of dispute resolution for its alleged time and cost efficiencies (*see Texas American Shipping v. Intermarine Financial Corp.,* 94–CV–3541, 1994 WL 369285, at \*1, 1994 U.S. Dist. LEXIS 9414, at \*4 (S.D.N.Y. July 12, 1994)), the scope of review by the arbitrator(s) is limited to matters which the parties "intended" to arbitrate. *See Green Tree Fin. Corp. v. Bazzle,* 539 U.S. 444, 452, 123 S.Ct. 2402, 156 L.Ed.2d 414 (2003) ("In certain limited circumstances, courts assume that the parties intended courts, not arbitrators, to decide a particular arbitration-related matter."); *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 83, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002) (discussing limited instances as those situations where the "contracting parties would likely have expected a court" to decide the dispute).

More broadly, the Supreme Court has distinguished between the procedure and substance of the matter in considering arbitrability and the proper scope of judicial review. *See Allied–Bruce Terminix Cos. v. Dobson,* 513 U.S. 265, 288 n. 1, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995) (citing sources for the proposition that laws regarding arbitrability were "matters of procedure rather than substance, because they were directed solely to the mechanisms for resolving the underlying disputes"); *see generally* "Steelworkers Trilogy" *United Steelworkers of America v. American Manufacturing Co.,* 363 U.S. 564 (1960);

*United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); and *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960) (holding that questions of substantive arbitrability, *i.e.*, whether the grievance is one that the parties are contractually bound to arbitrate at all, are for the courts, not the arbitrator). *See also Gwertzman v. Gwertzman, Pfeffer, Tokar & Lefkowitz*, No. 87–CV–6824 (JFK), 1988 WL 138149, *2, 1988 U.S. Dist. LEXIS 13975, *6–7 (S.D.N.Y.1988) ("Where jurisdiction over a particular type of dispute is statutorily within the exclusive control of the Court, or where judicial enforcement of particular rights is mandated by public policy, an agreement to arbitrate will not be given effect by the courts.").

■ The issue before the Pennsylvania court, disqualification of an attorney for an alleged conflict of interest, is a substantive matter for the courts and not arbitrators. The Federal Arbitration Act, pursuant to which Munich Re moves this Court, was "designed to provide merely a procedural remedy which would not interfere with state substantive law." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 411, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). Attorney discipline has historically been a matter for judges and not arbitrators because it requires an application of substantive state law regarding the legal profession and results in an enforceable judicial order. *Feingberg v. Katz*, No. 01–CV–2739 (CSH), 2003 WL 260571, 2003 U.S. Dist. LEXIS 1677 (S.D.N.Y.2003) ("The tendency to analogize arbitration to trial, and arbitrator to judge, should ...

be avoided."); *Blue Cross and Blue Shield of New Jersey, et al. v. Philip Morris, Inc.*, 53 F.Supp.2d 338, 342 (E.D.N.Y.1999) ("Whether to disqualify counsel is a matter subject to the trial court's sound discretion.") (internal quotations and citations omitted); Robert J. Martineau, *The Supreme Court and State Regulation of the Legal Profession*, 8 Hastings Const. L.Q. 199, 216 (1981) (noting that, in each state, it is the responsibility of the highest court to dictate standards for education, admission and discipline of attorneys) (citation omitted).

New York and Pennsylvania courts [1] have determined with some degree of certainty that "possible attorney disqualification—is not capable of settlement by arbitration." *In Matter of Arbitration Between R3 Aerospace Inc., Marshall of Cambridge Aerospace Ltd.*, 927 F.Supp. 121, 123 (S.D.N.Y.1996) (*citing Bidermann Indus. Licensing Inc. v. Avmar N.V.*, 173 A.D.2d 401, 570 N.Y.S.2d 33, 34 (1991)) ("The subject matter of the dispute in this case—i.e., possible attorney disqualification—is not capable of settlement by arbitration."). *See, e.g., Croushore v. Buchanan Ingersoll P.C.*, 1996 WL 932086, 1996 Pa. Dist. & Cnty. Dec. LEXIS 212 (Pa.Com.Pl.1996) ("[B]y agreeing to submit a dispute to arbitration, a party has not given up its right to seek judicial review of its claims that a former attorney or former law firm is breaching fiduciary duties owed to the party, as a former client."); *Bidermann Indus. Licensing, Inc. v. Avmar N.V.*, 173 A.D.2d 401, 402, 570 N.Y.S.2d 33 (N.Y.App.Div.1991) ("Issues of attorney disqualification ... involve interpretation and application of the Code of Profession-

---

1. The arbitration clause designates New York as the choice of forum. Contract, Article XV (b). Saul Ewing and ACE Property and Casualty are both citizens of Pennsylvania. Respondent ACE's Mem. of Law in Support of Opposition to Munich Re's Petition for the Appointment of an Umpire at 6.

al Responsibility and Disciplinary Rules ... and cannot be left to the determination of arbitrators...."); *Erdheim v. Selkowe,* 51 A.D.2d 705, 705, 380 N.Y.S.2d 20 (N.Y.App.Div.1976) (finding that arbitrators lacked the ability to censure attorneys and that this power "is reserved to the Appellate Division of the Supreme Court in each department.").

The issue of disqualification, therefore, is properly before the Pennsylvania court. Further, although it is clearly within my power to grant a stay, there is no articulable benefit to do so since the Pennsylvania court will soon decide the conflict issue currently *sub judice* before it.

## IV. CONCLUSION

For the foregoing reasons, Petitioner Munich Reinsurance's petition to appoint an umpire is DENTED and the Petition is DISMISSED.

The Clerk of the Court is instructed to close this matter and remove it from my docket.

**IT IS SO ORDERED.**