**Kimberly CORK, Plaintiff–Appellant,**

v.

**SENTRY INSURANCE and Dairyland Insurance Company, Defendants– Appellees.**

No. 07CA0967.

Colorado Court of Appeals, Div. VI.

July 10, 2008.

Rehearing Denied Aug. 21, 2008.

Avery Law Firm, James W. Avery, Denver, Colorado, for Plaintiff–Appellant.

Senter Goldfarb & Rice, LLC, Arthur J. Kutzer, Joel A. Palmer, Denver, Colorado, for Defendants–Appellees.

Opinion by Judge WEBB.

In this underinsured motorist (UIM) benefits and insurance bad faith case, plaintiff, Kimberly Cork, appeals the summary judgment in favor of defendants Sentry Insurance and its subsidiary, Dairyland Insurance Company, dismissing both claims as untimely. We affirm as to the UIM claim and reverse as to the bad faith claim.

## I. Undisputed Facts

Cork suffered a closed head injury in a two-car accident while a passenger in a vehicle driven by her daughter, who was insured by Dairyland. The daughter's policy afford-ed Cork UIM coverage of $50,000 per person. Concerning arbitration of a UIM claim, it provided:

> If we and you, or your legal representative, don't agree on the legal responsibility of the uninsured motorist to pay your damages or the amount of damages, *then upon consent of both parties*, the disagreement will be settled by arbitration.

(Emphasis added.)

Shortly after the accident, Cork gave Dairyland notice and received an application for Personal Injury Protection (PIP) benefits. Thereafter, she provided Dairyland with medical records and periodic updates on her condition. Dairyland's analysis of this information reflected difficulty in apportioning Cork's injuries between the auto accident and a prior skiing accident.

On August 4, 2003, Cork settled her lawsuit against the other driver for $25,000 with Dairyland's consent. The record discloses no further communications between Cork and Dairyland until April 2005, when Cork's attorney made a written demand on Dairyland for payment of $25,000 in UIM benefits. He provided a detailed analysis of her medical condition, her economic losses, and the law on aggravation of a preexisting condition. In May 2005, Dairyland rejected Cork's demand and offered to pay $15,000 for "full and final settlement" of the UIM benefits claim.

On June 2, 2005, Cork wrote to Dairyland: "[D]emand is hereby made for arbitration in accordance with the UM/UIM policy provisions of the Dairyland policy." Dairyland responded on June 29, 2005: "You will note ... that arbitration is voluntary, not mandatory. Please let us know if you are aware of any other policy materials which indicate arbitration is mandatory." The parties never agreed to arbitration.

Rather than seeking to compel arbitration, on April 18, 2006, Cork filed this action alleging claims for UIM benefits and breach of the duty of good faith and fair dealing for failing to pay UIM benefits. The trial court granted Dairyland's motions for summary judgment, separately dismissing both of Cork's claims as barred by applicable statutes of limitations.

## II. Standard of Review

We review a summary judgment de novo. *Brodeur v. Am. Home Assurance Co.*, 169 P.3d 139, 146 (Colo.2007). Summary judgment is appropriate only if the pleadings and supporting documents show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Id.* The nonmoving party is entitled to the benefit of all favorable inferences reasonably drawn from the undisputed facts; all doubts must be resolved against the moving party. *Id.*

Questions of when a cause of action accrues, whether a claim is barred by a statute of limitations, and if a statute of limitations should be equitably tolled, are issues of fact. *Olson v. State Farm Mut. Auto. Ins. Co.*, 174 P.3d 849, 853 (Colo.App. 2007). However, if undisputed evidence shows that a plaintiff discovered or reasonably should have discovered a claim as of a particular date, that a statute of limitations bars a claim, or that a plaintiff is not entitled to rely on the doctrine of equitable tolling, then summary judgment may be granted. *Id.*

## III. The UIM Benefits Claim

Cork first contends that because she made a timely demand for arbitration of the UIM benefits dispute, the trial court erred in holding this claim time barred based on her failure to file an action within two years of her settlement with the underinsured driver. We disagree.

Section 13–80–107.5(1)(b), C.R.S.2007, provides in pertinent part:

An action or arbitration of an "underinsured motorist" insurance claim, as defined in section 10–4–609(4), C.R.S., shall be commenced or demanded by arbitration demand within three years after the cause of action accrues; except that, if the underlying bodily injury liability claim against the underinsured motorist is preserved by ... payment of ... the liability claim settlement ... then an action or arbitration of an underinsured motorist claim shall be timely if such action is commenced *or such arbitration is demanded within two years after the insured received payment of the settlement* .... In no event shall the insured have less than three years after the cause of action accrues within which to commence such action or demand arbitration.

(Emphasis added.)

Cork concedes that section 13–80–107.5(1)(b) establishes a two year period from the settlement date—here until August 4, 2003—within which to seek recovery of UIM benefits against Dairyland, and that she did not file her action against Dairyland until April 18, 2006. Nevertheless, she argues that her June 2, 2005, letter demanding arbitration "clearly complied with the statutory provision." Alternatively, Cork argues that the running of the limitations period should have been stayed based on Dairyland's purportedly ambiguous conduct concerning arbitration of the UIM claim. We consider in turn and reject both assertions.

## A. Arbitration Demand

We first reject Cork's argument that her arbitration demand satisfied the statute of limitations in section 13–80–107.5(1)(b), because the insurance policy only contemplated arbitration by mutual agreement.

Statutory interpretation is a question of law subject to de novo review. *Francis ex rel. Goodridge v. Dahl*, 107 P.3d 1171, 1176 (Colo.App.2005). When interpreting statutes, a court's task is to ascertain and give effect to the intent of the General Assembly. *Id.* To determine that intent, courts look to the statutory language, giving words or phrases their commonly accepted meaning. *Id.*

"If explicit statutory provisions are ambiguous or silent regarding the matter at issue, we interpret the statute to comport with the legislature's objectives." *Buckley v. Chilcutt*, 968 P.2d 112, 117 (Colo.1998). A statute subject to more than one reasonable interpretation is ambiguous. *Estate of David v. Snelson*, 776 P.2d 813, 817 (Colo.1989).

Courts presume that the legislature intended a just and reasonable result, § 2–4–201(1)(c), C.R.S.2007, and courts will not interpret a statute in a manner that leads to an

absurd or unreasonable outcome. *See, e.g., In re Marriage of Roosa,* 89 P.3d 524, 528 (Colo.App.2004).

Section 13–80–107.5(2)(b) defines "arbitration demand" as:

> [A] written demand for arbitration delivered to the insurer that reasonably identifies the person making the claim, the identity of the uninsured or underinsured motorist, if known, and the fact that an uninsured or underinsured motorist insurance arbitration is being demanded.

However, the statute does not specify whether an arbitration demand can be made only pursuant to a preexisting mandatory arbitration agreement or if such a demand can also be made where, as here, the parties' agreement acknowledges only that arbitration may occur by consent. Thus, we conclude that the statute is ambiguous.

■ The parties cite no legislative history and we have found none addressing the circumstances underlying an arbitration demand pursuant to section 13–80–107.5(1)(b). Nonetheless, we conclude that a demand satisfying the statute can be made only under a preexisting mandatory arbitration agreement.

■ "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Eychner v. Van Vleet,* 870 P.2d 486, 490 (Colo.App.1993); *see* § 13–22–207(3), C.R.S.2007 ("If the court finds that there is no enforceable agreement," it may not order arbitration).

"When a dispute has arisen under an agreement providing for arbitration, the complaining party initiates the arbitration proceedings by serving ... a demand for arbitration on the other party." *Domke on Commercial Arbitration,* Vol. 1 § 18:1 (April 2007); *see* § 13–22–209(1), C.R.S.2007.

If the other party is unwilling to arbitrate, "the demanding party may apply to a court to compel the former to arbitrate pursuant to their agreement." *Id.; see* § 13–22–207(1), C.R.S.2007 (An order compelling arbitration may be sought "On the motion of a person showing an agreement to arbitrate"). In such a proceeding, the court must first determine whether a valid agreement to arbitrate exists between the parties. *Eagle Ridge Condo. Ass'n v. Metro. Builders, Inc.,* 98 P.3d 915, 917 (Colo.App.2004); *see* § 13–22–207(1)(b) (court shall order the parties to arbitrate "unless it finds that there is no enforceable agreement to arbitrate.").

Based on these authorities, treating Cork's June 2, 2005, letter to Dairyland as a demand for arbitration would lead to the absurd result of allowing Cork to satisfy the statute of limitations, although her demand was unenforceable because the parties had not agreed to arbitrate. This interpretation would leave the underlying UIM benefits claim in limbo until either Cork abandoned arbitration and brought a civil action, as she eventually did, or Dairyland obtained a determination under section 13–22–207(2) that the dispute was not arbitrable. *See Brown v. Am. Family Ins. Group,* 989 P.2d 196 (Colo.App.1999) (construction that would effectively eliminate the statute of limitations and frustrate its purpose is an absurd result which should not be reached).

We express no opinion whether section 13–80–107.5(1)(b) could be tolled by a demand for arbitration pending resolution of arbitrability where, unlike here, the parties' agreement was ambiguous concerning the obligation to arbitrate.

### B. Equitable Tolling and Equitable Estoppel

■ We also reject Cork's argument that the running of the limitations period should have been stayed based on Dairyland's conduct following her arbitration demand.

Statutes of limitation "promote justice, discourage unnecessary delay, and forestall prosecution of stale claims." *Dean Witter Reynolds, Inc. v. Hartman,* 911 P.2d 1094, 1096 (Colo.1996). Nevertheless, "two doctrines have been employed to stay the running of statutes of limitations. While both are grounded in equity, they are analytically distinct." *Shell Western E & P, Inc. v. Dolores County Bd. of Com'rs,* 948 P.2d 1002, 1008 (Colo.1997).

■ The first doctrine, equitable tolling of a statute of limitations, "is limited to situations in which either the defendant has wrongfully impeded the plaintiff's ability to bring the claim or truly extraordinary circumstances prevented the plaintiff from filing his or her claim despite diligent efforts." *Brodeur*, 169 P.3d at 149.

■ The second doctrine, equitable estoppel, is not favored and will be applied only when all of the following elements are clearly shown: (1) The party to be estopped must know the facts; (2) this party also must intend that her conduct be acted on or must so act that the party asserting the estoppel has a right to believe the other party's conduct is so intended; (3) the party asserting the estoppel must be ignorant of the true facts; and (4) the party asserting the estoppel must rely on the other party's conduct to her injury. *Shell Western E & P, Inc. v. Dolores County Bd. of Comm'rs*, 948 P.2d at 1008.

Here, even if we assume that the running of the limitations period was equitably stayed based on Dairyland's conduct, we still agree with the trial court that Cork's UIM benefits claim was untimely.

When Cork served her arbitration demand in June 2005, two months remained of the two-year limitations period. On November 10, 2005, Cork wrote to Dairyland: "if Dairyland does not affirmatively state that it is willing to arbitrate this matter by December 1, 2005, I will construe it as a refusal to arbitrate and will file suit in District Court." Dairyland did not answer the letter. Cork confirmed her assumption of a refusal to arbitrate in a follow-up letter to Dairyland dated January 6, 2006.

We conclude that once Cork gave Dairyland a deadline to confirm arbitration or face suit, any equitable stay of the running of the limitations period ended when that deadline lapsed. Even giving Cork up to January 6, 2006, she still failed to bring suit within the two months then remaining in the limitations period.

Accordingly, we conclude that the trial court did not err in dismissing Cork's UIM benefits claim as untimely.

## IV.

Cork next contends the trial court erred in holding that her bad faith breach of insurance contract claim is time barred by section 13–80–102, C.R.S.2007. We agree.

■ An insurer may face liability for bad faith breach of insurance contract by unreasonably denying payment of a valid claim or by failing reasonably to investigate a claim or to gather facts. *See Brodeur*, 169 P.3d at 147 fn. 7; *Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1274 (Colo.1985).

■ A bad faith breach of insurance contract claim is a tort claim governed by the two-year statute of limitations in section 13–80–102. *Harmon v. Fred S. James & Co.*, 899 P.2d 258, 262 (Colo.App.1994). Each bad faith act constitutes a separate and distinct tortious act, on which the statute of limitation begins to run anew when the plaintiff becomes aware of the injury and its cause. *Id.*

A bad faith cause of action accrues when both the nature of the injury and its causes are known or should be known through the exercise of reasonable diligence. § 13–80–108(1), C.R.S.2007; *see, e.g., Daugherty v. Allstate Ins. Co.*, 55 P.3d 224, 228 (Colo.App. 2002)(bad faith tort claim based on the insurer's breach of its duty to defend accrued no later than when the insured was named in a lawsuit in which his insurance company refused to defend him because the insured knew the injury he suffered as a result of the alleged bad faith conduct and the cause of that injury, not the date of the final judgment in the lawsuit).

However, "[e]ven once the elements necessary for accrual are clear, it can be difficult to prove exactly when a plaintiff knew or should have known of both the injury and its cause pursuant to section 13–80–108(1)." *Brodeur*, 169 P.3d at 148. The *Brodeur* court also explained "that an injury is different from the damages that flow from the injury." *Id.* at 147 fn. 8.

Here, for purposes of Cork's bad faith claim, the injury was Dairyland's refusal to pay remaining UIM policy benefits and its cause was a decision made in bad faith. But

the scant record and the parties' arguments provide us with only two accrual choices: either Dairyland's silence immediately after the settlement with the other driver, which would make the claim untimely; or Dairyland's final settlement offer, which would make the claim timely. We express no opinion whether subsequent development of the record following remand might show a specific act between the settlement and Dairyland's May 2005 final offer, on the basis of which Cork knew or should have known of Dairyland's bad faith.

Until an insured recovers from the tortfeasor, the insurer cannot know the amount of UIM benefits potentially due to its insured. *Freeman v. State Farm Mut. Auto. Ins. Co.,* 946 P.2d 584, 586 (Colo.App.1997). Thus, a bad faith claim for nonpayment of UIM benefits cannot accrue until the insured has obtained a judgment against or, as here, settled with the underinsured driver.

Here, for the following reasons, we perceive a genuine issue of material fact that the settlement coupled with Dairyland's unexplained failure to pay remaining UIM benefits promptly thereafter established the "date on which both the injury and its cause are known or should have been known through the exercise of reasonable diligence." *Harmon,* 899 P.2d at 260.

First, although Dairyland asserts that Cork made a claim for UIM benefits shortly before the settlement, this assertion is based solely on the allegation in Cork's complaint that "[p]rior to accepting the tendered settlement ... [she] advised [Dairyland] of her claim for [UIM] benefits." Cork states in her Response to Dairyland's Motion for Summary Judgment that she only advised Dairyland of "her *intent to pursue* an UIM claim under the Dairyland policy" before the settlement (emphasis added). Because this communication is not in the record, we are unable to ascertain whether Cork gave Dairyland a deadline to accept or reject the demand after the settlement date. Nor can we determine whether Cork provided sufficient undisputable supporting information that Dairyland's subsequent failure to pay created a reasonable inference of bad faith.

Second, in *Farmers Group, Inc. v. Trimble,* 691 P.2d 1138, 1142 (Colo.1984), the supreme court explained that "[i]f the action accrues at the point when payment is *refused,* the elements of the tort are satisfied on such *refusal,* and the continuing condition of nonpayment cannot be a predicate to a bad faith cause of action." *Id.* (quoting *Berry v. United of Omaha,* 719 F.2d 1127, 1129 (11th Cir.1983)(emphasis in original)). The only affirmative refusal by Dairyland to pay UIM benefits occurred in May 2005.

Third, while the magnitude of Cork's injuries appears to be well-documented, apportioning those injuries between the skiing accident and the auto accident would be a matter of medical opinion. Thus, Cork could reasonably have viewed some delay by Dairyland as needed to further evaluate apportionment. *See Trimble,* 691 P.2d at 1142 ("it is the affirmative act of the insurer in unreasonably refusing to pay a claim" that establishes tort liability).

Accordingly, we conclude the trial court erred in granting summary judgment for defendants on that claim.

Based on this conclusion, we need not address Cork's arguments that under C.R.C.P. 56(f) the summary judgment ruling should have been postponed.

The judgment is affirmed as to the UIM benefits claim, it is reversed as to the bad faith claim, and the case is remanded with directions to reinstate that claim.

Judge DAILEY and Judge ROMÁN concur.