**E–21 ENGINEERING, INC., a Colorado corporation, Plaintiff–Appellee,**

v.

**STEVE STOCK & ASSOCIATES, INC., a Colorado corporation, Defendant–Appellant.**

**No. 09CA1840.**

Colorado Court of Appeals, Div. III.

Aug. 5, 2010.

Lindquist & Vennum, P.L.L.P., Michael E. Bonifazi, Denver, Colorado, for Plaintiff–Appellee.

Moye White LLP, Burkeley N. Riggs, Elizabeth H. Getches, James Belgum, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge KAPELKE.[*]

In this action arising from a project to construct a seed storage facility for the United States Department of Agriculture, defendant, Steve Stock & Associates, Inc. (Stock), appeals the trial court's orders staying arbitration and dismissing its counterclaims against plaintiff, E–21 Engineering, Inc. (E–21). We vacate the orders and remand for an evidentiary hearing.

## I. Background

On November 15, 2005, E–21 sent Stock a letter of intent indicating that it intended to enter into a formal subcontract with Stock for the performance of certain aspects of the work on the project. The letter directed Stock to begin assembling six copies of its formal submittals and provide them to E–21 by December 8, 2005.

On December 16, 2005, E–21 sent Stock a subcontract, which includes a provision for mandatory arbitration. Neither party ever signed the subcontract.

Stock began working on the required submittals, which included shop drawings, samples, product data, and manufacturers' literature. Stock also applied for a bond.

On January 6, 2006, E–21 wrote Stock a letter in which it rescinded the letter of intent and stated that "no executed subcontract exists between our two firms, [and] therefore there is nothing to cancel." That same day, Stock advised E–21 of its belief that the cancellation of the letter of intent constituted a breach of contract and indicated that it would pursue legal action.

On June 28, 2007, Stock filed a demand for arbitration with the American Arbitration Association (AAA), asserting claims for damages. Following a lengthy hiatus during which the parties discussed possible settlement, on February 9, 2009, E–21 filed its complaint and motion to stay arbitration in the district court, asserting that no agreement to arbitrate existed between the parties.

On March 27, 2009, following a hearing, the trial court granted E–21's motion to stay arbitration. The court found that it was undisputed that Stock performed work but that there was no basis for arbitration because neither party had signed a written agreement to arbitrate. The court stated that it was "not aware of any Colorado case law holding that a party can be compelled to arbitration when that party has not signed a written agreement." In its order, the court provided that Stock "may submit as mandatory counterclaims its claims for damages" against E–21 within twenty days.

Thereafter, Stock filed counterclaims for breach of contract, promissory estoppel, unjust enrichment, and quantum meruit. E–21 moved to dismiss the counterclaims under C.R.C.P. 12(b)(5), asserting that they were barred as untimely under the general three-year limitation of actions in section 13–80–101(1)(a), C.R.S.2009. The trial court granted E–21's motion and dismissed Stock's counterclaims.

## II. Arbitration Agreement

Stock contends that the trial court erred in concluding that the parties had not agreed to arbitrate and by failing to hold an evidentiary hearing to resolve the issue of arbitrability. We conclude that further proceedings are required.

Arbitration agreements are governed by the Colorado Uniform Arbitration Act, sections 13–22–201 to –230, C.R.S.2009 (CUAA).

■ Under the CUAA, the trial court must determine "whether an agreement to arbitrate exists." § 13–22–206(2), C.R.S.2009. When presented with a contested motion to stay arbitration, the trial court is directed to

---

[*] Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. I, § 5(3), and

§ 24–51–1105, C.R.S.2009.

"proceed summarily to decide the issue" of arbitration. § 13–22–207(1)(b), C.R.S.2009. "Summary proceedings" begin with the trial court's consideration of any "undisputed 'affidavits, pleadings, discovery, and stipulations.'" *J.A. Walker Co. v. Cambria Corp.,* 159 P.3d 126, 130 (Colo.2007) (quoting *Jack B. Anglin Co. v. Tipps,* 842 S.W.2d 266, 269 (Tex.1992)). While challenges to undisputed material facts can be resolved on the record before the trial court, it should hold an evidentiary hearing to resolve challenges involving disputed material facts. *Id.*

An order granting a motion to stay arbitration is immediately appealable. § 13–22–228(1)(b), C.R.S.2009.

### A. Lack of Signature

■ The trial court determined that the parties' dispute was not arbitrable because the parties had not signed an agreement to arbitrate. Whether an agreement to arbitrate must be signed in order to be enforceable is a matter of first impression in Colorado. We conclude that parties may enter into an enforceable agreement to arbitrate notwithstanding the absence of their signatures.

■ "Whether an agreement to arbitrate exists is a matter of law that we review de novo." *Lane v. Urgitus,* 145 P.3d 672, 677 (Colo.2006). When interpreting the CUAA, "[w]e begin by analyzing the text of the CUAA, giving its words their ordinary and commonly-understood meanings." *Ingold v. AIMCO/Bluffs, L.L.C. Apartments,* 159 P.3d 116, 120 (Colo.2007). If a statute is silent regarding the matter at issue or if a provision is ambiguous, we interpret the statute according to the legislative objectives. *Cork v. Sentry Ins.,* 194 P.3d 422, 425 (Colo.App. 2008).

Although the CUAA requires that an arbitration agreement be "contained in a record," it does not specifically require that the written instrument be signed by either or both parties. § 13–22–206(1), C.R.S.2009; *see* §§ 13–22–201 to –230. Because the statute is silent on this issue, we conclude that it is ambiguous in this regard. *Cork v. Sentry,* 194 P.3d at 426.

■ "[C]ommon law contract principles allow for the formation of contracts without the signatures of the parties bound by them." *Yaekle v. Andrews,* 195 P.3d 1101, 1107 (Colo.2008); *see Lane v. Urgitus,* 145 P.3d at 677 ("we follow state law principles governing contract formation" when determining whether parties have agreed to arbitrate). Arbitration agreements in Colorado have also been found to be binding on nonsignatories under some circumstances. *See Smith v. Multi–Financial Sec. Corp.,* 171 P.3d 1267, 1272 (Colo.App.2007).

Court decisions under the Federal Arbitration Act, 9 U.S.C. § 2, have held that no signature is required to satisfy the Act's requirements for a binding arbitration agreement. *See, e.g., Caley v. Gulfstream Aerospace Corp.,* 428 F.3d 1359, 1369 (11th Cir. 2005) (citing "overwhelming weight of authority" in support of conclusion that the Federal Arbitration Act does not require a signature); *Genesco, Inc. v. T. Kakiuchi & Co.,* 815 F.2d 840, 846 (2d Cir.1987) ("it is well-established that a party may be bound to an agreement to arbitrate even absent a signature"); *Med. Dev. Corp. v. Indus. Molding Corp.,* 479 F.2d 345, 348 (10th Cir.1973). Although not controlling here, these cases are persuasive to us because the Federal Arbitration Act and the CUAA contain substantially similar language. *See Ingold,* 159 P.3d at 120.

We therefore conclude that the lack of signature in and of itself does not invalidate an otherwise enforceable agreement to arbitrate.

### B. Agreement to Arbitrate

After concluding that an effective agreement to arbitrate requires the parties' signatures, the trial court essentially ended its analysis of the parties' alleged agreement. At the hearing, Stock's counsel indicated that he was prepared to adduce testimony by Steve Stock concerning his acceptance of the subcontract containing the arbitration provision by his performance of substantial work. The court indicated that it would accept for purposes of discussion that Stock performed substantial work. The court indicated that there was no need to hear the evidence and

went on to conclude that the lack of the parties' signatures was fatal to the claim of arbitrability.

■ Because the trial court's determination of arbitrability was based on an erroneous legal conclusion and because the court did not make factual findings regarding enforceability absent a signed document, we remand for an evidentiary hearing and for a determination whether the parties had agreed to arbitrate any disputes.

On remand, the trial court should use common law contract formation principles to determine whether the parties agreed to arbitrate. *See Lane v. Urgitus,* 145 P.3d at 677. Specifically, if mutuality of assent to the contract submitted to Stock by E–21 can be established, the arbitration agreement may be valid and enforceable despite the absence of a signature. *See, e.g., Todd Habermann Constr., Inc. v. Epstein,* 70 F.Supp.2d 1170, 1174 (D.Colo.1999) (although Colorado and federal law both require that the terms of an arbitration agreement be in writing, neither requires that the agreement be signed by either party).

Further, because the record reflects disagreement regarding the timing of the exchanged documents, the content of the submittals, and other facts that are material to the terms of the parties' alleged agreement, the trial court shall hold an evidentiary hearing to consider the disputed facts and resolve the challenge regarding the existence of the alleged arbitration agreement. *See J.A. Walker v. Cambria,* 159 P.3d at 130.

### III. Remaining Contentions

Stock contends that the trial court erred in dismissing its counterclaims as untimely.

■ Initially, we note that if on the one hand, the trial court determines on remand that the parties agreed to arbitrate, this issue becomes moot because Stock's claims will be submitted to arbitration. If on the other hand, the trial court finds that there was no agreement to arbitrate, we conclude that the court erred in dismissing Stock's counterclaims and that they should be reinstated pursuant to section 13–80–109, C.R.S.2009, because they are compulsory.

■ A compulsory counterclaim is one that arises out of the same transaction or occurrence as the opposing party's claim. *Allen v. Martin,* 203 P.3d 546, 555 (Colo.App. 2008). Section 13–80–109 revives compulsory counterclaims that would otherwise be barred by a statute of limitations. It provides in pertinent part:

A counterclaim or setoff arising out of the transaction or occurrence which is the subject matter of the opposing party's claim shall be commenced within one year after service of the complaint by the opposing party and not thereafter.

§ 13–80–109.

The accepted method for determining whether a claim arises out of the same transaction or occurrence as the first claim is the logical relationship test: whether the subject matter of the counterclaim is logically related to the subject matter of the initial claim.

*Allen v. Martin,* 203 P.3d at 555–56.

■ We review a trial court's determination regarding a compulsory counterclaim de novo. *See Grynberg v. Phillips,* 148 P.3d 446, 448 (Colo.App.2006).

Our analysis using the logical relationship test leads us to the conclusion that Stock's counterclaims are compulsory. E–21's complaint and motion to stay arbitration includes a claim that no contract existed between the parties, specifically because the subcontract was unsigned. Stock's counterclaims arose out of and related directly to the same alleged contract that E–21 denied existed. These counterclaims included allegations that the parties *did* agree to arbitrate notwithstanding the lack of signature and that E–21 breached the contract that contained the arbitration agreement. If E–21 were to prevail on its claim that no contract existed, obviously Stock would be unable to establish its breach of contract claim. Thus, logically, Stock's counterclaim was related to E–21's claim. *See Dinosaur Park Investments, L.L.C. v. Tello,* 192 P.3d 513, 517 (Colo.App. 2008); *Allen v. Martin,* 203 P.3d at 555–56.

As such, we conclude that Stock's counterclaims were compulsory and would be re-

vived pursuant to section 13–80–109. Based on this resolution, we need not address Stock's remaining contentions.

The orders staying the arbitration and dismissing the counterclaims are vacated, and the case is remanded for further proceedings in accordance with this opinion.

Judge ROY and Judge BOORAS concur.