The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
August 11, 2022

**2022COA93**

**No. 20CA2105, *Herrera v. Santangelo Law Offices, P.C.* — ADR — Arbitration — Colorado Uniform Arbitration Act — Vacating Award — Sanctions**

A division of the court of appeals examines whether an arbitrator had authority to sanction an arbitrating party's attorney who was not himself a party to the arbitration agreement that bound his client. The division first determines that, as a nonparty to the arbitration agreement, the attorney was not bound to his client's arbitration obligation by ordinary principles of contract or agency law under *N.A. Rugby Union LLC v. U.S. of Am. Rugby Football Union*, 2019 CO 56. The division thus concludes that the arbitrator did not possess any authority to sanction the attorney by virtue of his client's arbitration obligation.

The division then concludes that the arbitrator did not otherwise possess authority to sanction the attorney, either inherently as a quasi-judicial tribunal or statutorily under C.R.C.P. 11; section 13-17-102, C.R.S. 2021; or the provisions of the Colorado Uniform Arbitration Act, sections 13-22-201 to -230, C.R.S. 2021.

Court of Appeals No. 20CA2105
Larimer County District Court No. 19CV30116
Honorable Daniel M. McDonald, Judge

Robert J. Herrera,

Plaintiff-Appellant,

v.

Santangelo Law Offices, P.C.,

Defendant-Appellee.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE KUHN
Navarro and Lipinsky, JJ., concur

Announced August 11, 2022

Gordon & Rees LLP, John M. Palmeri, John R. Mann, Denver, Colorado, for
Plaintiff-Appellant

Ringenberg & Beller, P.C., Richard D. Beller, Fort Collins, Colorado, for
Defendant-Appellee

¶ 1    In an arbitration between Santangelo Law Offices, P.C., and Touchstone Home Health LLC, the arbitrator sanctioned Touchstone's arbitration counsel, Robert J. Herrera, after Herrera fraudulently obtained Santangelo's signature on a settlement agreement and told the arbitrator a known falsehood — that the parties had settled.  Invoking C.R.C.P. 11 and section 13-17-102, C.R.S. 2021, the arbitrator awarded Santangelo nearly $150,000 against Herrera personally for attorney fees Santangelo incurred in responding to Herrera's falsehood and in pursuing sanctions against him.  The district court confirmed this award.

¶ 2    On appeal, Herrera contends that the arbitrator lacked the authority to sanction him personally.  We agree and reverse accordingly.

I.    Background

¶ 3    Touchstone contracted for Santangelo's legal services, entering into an Agreement for Legal Services (the Touchstone-Santangelo fee agreement) containing an arbitration clause:

> The parties agree to submit any controversy or claim in any way arising from this Agreement or the parties' relationship to confidential binding arbitration . . . by a single attorney. Such arbitration shall be conducted pursuant

1

> to the Commercial Arbitration Rules (CARs) of the American Arbitration Association (AAA) . . . .[1]

Herrera did not sign the fee agreement in either a personal or representative capacity, nor was he even counsel for Touchstone when it was executed.

¶ 4    Years later, when Touchstone and Santangelo's relationship ended, Santangelo sought to collect its unpaid legal fees and demanded arbitration pursuant to the Touchstone-Santangelo fee agreement. Herrera entered his appearance in the arbitration as Touchstone's sole attorney. The parties participated in a preliminary hearing. The arbitrator memorialized that hearing in a report and scheduling order, which stated that "[t]he Colorado Rules of Civil Procedure shall govern [the arbitration] and the laws of the State of Colorado shall apply."

¶ 5    Then, however, "something very strange happened." *In re Touchstone Home Health LLC*, 572 B.R. 255, 264 (Bankr. D. Colo. 2017). Soon after the parties rejected opposing settlement offers,

---

[1] The parties agreed to several modifications of the Commercial Arbitration Rules not relevant here.

Herrera asserted in an email to the arbitrator that the parties had reached a settlement, but

> [Santangelo] disputed this, asserting that [Touchstone] had engaged in a fanciful scheme to fabricate a settlement by using a fake FedEx driver to obtain a signature from [Santangelo] on a delivery slip [in exchange for a box containing approximately 5,000 one-dollar bills], which signature was then superimposed or forged on a settlement agreement that [Santangelo] had not even seen.

*Id.*

¶ 6     In response, Santangelo moved for sanctions against Touchstone and Herrera in his personal capacity.  Herrera responded by disclaiming any obligation to arbitrate his individual liability for sanctions and filing a court action for declaratory relief establishing that the arbitrator lacked the authority to enter sanctions against him.

¶ 7     Following hearings on the purported settlement and Santangelo's motion, the arbitrator found that Herrera admitted he knew that (1) Santangelo's signature on the purported settlement agreement was obtained and placed on the document through deception; (2) this signature formed the basis for his assertion to the arbitrator that the parties had settled; and (3) his email to the

arbitrator was therefore without merit and went uncorrected even through the arbitrator's initial hearing on the purported settlement.[2] The arbitrator also found that Herrera was aware that the Colorado Rules of Civil Procedure and Colorado law generally would apply to the arbitration because, at the preliminary hearing, he had agreed on behalf of Touchstone that those authorities would govern the arbitration.

¶ 8    The arbitrator then determined that the issue of sanctions against Herrera was arbitrable, that Rule 11 and section 13-17-102 governed his consideration of sanctions, that Herrera's conduct was sanctionable under both, and that Santangelo reasonably incurred $148,184.15 in fees and expenses in both responding to Herrera's false assertion and moving for sanctions against him. The arbitrator awarded this amount to Santangelo and ordered Herrera to pay it personally. Touchstone and Santangelo later settled their

---

[2] Herrera later stipulated to many of these facts in his agreement with Colorado's Office of Attorney Regulation Counsel to a three-year suspension of his license to practice law for this and other misconduct. *People v. Herrera,* (Colo. O.P.D.J. No. 18PDJ026, Nov. 29, 2018).

4

fee dispute but did not resolve the arbitrator's award of sanctions against Herrera individually.

¶ 9 In his district court suit, Herrera moved to vacate the arbitrator's award of sanctions against him pursuant to section 13-22-223(1), C.R.S. 2021. The court denied Herrera's motion and instead confirmed the award under section 13-22-223(4).

## II. Analysis

¶ 10 Herrera contends the award of sanctions must be vacated because (1) he did not agree to arbitrate any issues of attorney sanctions, either individually in the arbitration hearing or as a nonparty bound to the Touchstone-Santangelo fee agreement; and (2) the arbitrator had no authority to sanction the attorney of an arbitrating party absent an agreement granting the arbitrator such authority. We agree with both contentions.

### A. Standard of Review

¶ 11 "Colorado law favors the resolution of disputes through arbitration." *J.A. Walker Co. v. Cambria Corp.*, 159 P.3d 126, 128 (Colo. 2007). This preference is embedded in both the Colorado Constitution and the Colorado Uniform Arbitration Act (CUAA). §§ 13-22-201 to -230, C.R.S. 2021; *Johnson-Linzy v. Conifer Care*

5

*Communities A, LLC*, 2020 COA 88, ¶ 16 (citing Colo. Const. art. XVIII, § 3).

¶ 12     "To facilitate confidence in the finality of arbitration awards and discourage piecemeal litigation, the [CUAA] strictly limits the role of the courts in reviewing awards." *Magenis v. Bruner*, 187 P.3d 1222, 1224 (Colo. App. 2008).  Thus, "a court may decline to confirm an arbitration award only in limited circumstances." *Barrett v. Inv. Mgmt. Consultants, Ltd.*, 190 P.3d 800, 802 (Colo. App. 2008); *see also Treadwell v. Vill. Homes of Colo., Inc.*, 222 P.3d 398, 401 (Colo. App. 2009) ("These limited circumstances . . . do not include the merits of the award.  Rather, they involve 'specific instances of outrageous [arbitral] conduct' and 'egregious departures from the parties' agreed-upon arbitration.'" (quoting *Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 586 (2008))).

¶ 13     This limited scope of judicial review springs from the general principle that "[a]rbitration is 'a matter of contract between the parties; it is a way to resolve those disputes — but only those disputes — that the parties have agreed to submit to arbitration.'" *See Johnson-Linzy*, ¶ 11 (quoting *First Options of Chi., Inc. v. Kaplan,* 514 U.S. 938, 943 (1995)).  And because arbitration is a

matter of contract, "[t]he powers of an arbitrator derive from the arbitration agreement between the parties and are strictly defined by the terms of that agreement." *Magenis*, 187 P.3d at 1224 (citing *Coors Brewing Co. v. Cabo*, 114 P.3d 60, 64 (Colo. App. 2004)). That being said, the CUAA provides that it "shall govern" arbitration agreements, § 13-22-203, C.R.S. 2021, and "[p]arties may waive or vary the effect of the CUAA 'to the extent permitted by law,'" *Johnson-Linzy*, ¶ 16 (quoting § 13-22-204(1), C.R.S. 2021).

¶ 14    As relevant here, the CUAA states that "the court shall vacate an award made in the arbitration proceeding if it finds that . . . [a]n arbitrator exceeded the arbitrator's powers . . . [or] [t]here was no agreement to arbitrate . . . ." § 13-22-223(1)(d), (e).  It also provides that "[t]he court shall decide whether an agreement to arbitrate exists or a controversy is subject to an agreement to arbitrate." § 13-22-206(2), C.R.S. 2021.

¶ 15    We thus review de novo both whether an enforceable agreement to arbitrate exists and, if so, the scope of that agreement. *Moffett v. Life Care Ctrs. of Am.*, 219 P.3d 1068, 1072 (Colo. 2009); *N.A. Rugby Union LLC v. U.S. of Am. Rugby Football Union*, 2019 CO 56, ¶ 19.  We also review de novo whether an arbitrator exceeded

7

their powers.[3]  *See Treadwell*, 222 P.3d at 400 ("Courts independently review whether an arbitrator had power to resolve a dispute.").

¶ 16    Lastly, the interpretation of the CUAA also presents a question of law we review de novo.  *In re Marriage of Roth*, 2017 COA 45, ¶ 15.  "When interpreting the CUAA, '[w]e begin by analyzing the text of the CUAA, giving its words their ordinary and commonly-understood meanings.'"  *E-21 Eng'g, Inc. v. Steve Stock & Assocs., Inc.*, 252 P.3d 36, 39 (Colo. App. 2010) (quoting *Ingold v. AIMCO/Bluffs, L.L.C. Apartments*, 159 P.3d 116, 120 (Colo. 2007)).  We "striv[e] to give effect to the General Assembly's intent and chosen legislative scheme."  *Sooper Credit Union v. Sholar Grp. Architects, P.C.*, 113 P.3d 768, 771 (Colo. 2005).

---

[3] Santangelo argues that we review the arbitrator's conclusion that the issue of sanctions was arbitrable for a "manifest disregard of the law."  We disagree.  *See Johnson-Linzy v. Conifer Care Communities A, LLC*, 2020 COA 88, ¶ 16 ("To deviate from [section 13-22-206(2), C.R.S. 2021,] . . . 'the law requires that parties must *plainly and unambiguously* empower an arbiter to decide arbitrability and that they must *clearly and knowingly* assent to terms incorporated by reference.'" (quoting *Taubman Cherry Creek Shopping Ctr., LLC v. Neiman-Marcus Grp., Inc.*, 251 P.3d 1091, 1095 (Colo. App. 2010))).

### B. Herrera Did Not Agree with Santangelo to Arbitrate Sanctions

¶ 17    Santangelo argues that the arbitrator had the authority to sanction Herrera because either (1) the arbitration language in the Touchstone-Santangelo fee agreement bound Herrera; or (2) Herrera personally agreed that the arbitrator possessed the authority to sanction the parties' counsel individually.  We are not persuaded.

#### 1. The Arbitration Language of the Touchstone-Santangelo Fee Agreement Did Not Bind Herrera

¶ 18    Santangelo does not dispute that the arbitration language of its fee agreement with Touchstone by its terms bound only the "parties" — and that Herrera was not a "party."  The arbitrator agreed, consistently finding that, throughout the arbitration, Herrera was acting as counsel for Touchstone and not in his individual capacity.  Nonetheless, Santangelo contends that the Touchstone-Santangelo fee agreement empowered the arbitrator to sanction the parties' attorneys, and that Herrera was bound to it under principles of contract and agency law.  We disagree with its second contention and need not reach its first.

¶ 19    As a general rule, "when the requirement to arbitrate is created by an agreement, it can be invoked only by a signatory of

9

the agreement, and only against another signatory." *Smith v. Multi-Fin. Sec. Corp.*, 171 P.3d 1267, 1272 (Colo. App. 2007). However, in *Rugby Union*, ¶¶ 20-22, the supreme court adopted seven exceptions, born of ordinary principles of contract and agency law, that may bind a nonparty to an arbitration agreement: (1) incorporation of an arbitration provision by reference in another agreement; (2) the nonsignatory's assumption of the arbitration obligation; (3) agency; (4) veil-piercing/alter ego; (5) equitable estoppel; (6) successor-in-interest; and (7) third-party beneficiary.

¶ 20    Santangelo first argues that Herrera assumed Touchstone's obligation to arbitrate. *See id.* (citing *Thomson-CSF, S.A. v. Am. Arb. Ass'n*, 64 F.3d 773, 777 (2d Cir. 1995)).[4] According to Santangelo, Herrera did so by (1) entering his appearance as counsel for Touchstone and (2) agreeing — on Touchstone's behalf in the preliminary hearing before the issue of sanctions arose — that "[t]he

---

[4] The parties have not cited — nor have we found — a Colorado case applying this exception. For guidance, we look to federal cases interpreting the Federal Arbitration Act. *See E-21 Eng'g, Inc. v. Steve Stock & Assocs., Inc.*, 252 P.3d 36, 39 (Colo. App. 2010) (citing *Ingold v. AIMCO/Bluffs, L.L.C. Apartments*, 159 P.3d 116, 120 (Colo. 2007)).

Colorado Rules of Civil Procedure shall govern [the arbitration] and the laws of the State of Colorado shall apply."

¶ 21    We conclude that Herrera did not "manifest an intention to be bound" by the Touchstone-Santangelo fee agreement through his conduct.  *See Thomson-CSF, S.A.*, 64 F.3d at 777; *In re Arb. Between Promotora da Navegacion, S.A. & Sea Containers, Ltd.*, 131 F. Supp. 2d 412, 417 (S.D.N.Y. 2000) ("[T]he fundamental question . . . is whether [the nonsignatory] evidenced — expressly or implicitly — an unambiguous intent to arbitrate the submitted dispute.").  Rather, Herrera "explicitly disavowed any obligations arising out of it" from the moment Santangelo filed its motion for sanctions against Herrera — even going as far as filing a court action seeking a declaration that the arbitrator lacked the authority to impose sanctions against him.  *See Thomson-CSF*, 64 F.3d at 777; *Gvozdenovic v. United Air Lines, Inc.*, 933 F.2d 1100, 1103-05 (2d Cir. 1991) (concluding that a nonsignatory "manifested a clear intent" to arbitrate because, in part, nonsignatory did not, at any point before or during the arbitration, object to the process, refuse to arbitrate, or make any attempt to seek judicial relief); *Henry v. Imbruce*, 177 A.3d 1168, 1184 (Conn. App. Ct. 2017) ("The

11

[nonsignatory's] conduct belies his claim that he is not bound by the arbitration. . . . [H]e repeatedly represented himself both at the trial court and in the arbitration as involved in and bound by the arbitration . . . [and he] did not argue that he was not a party until after the arbitrator rendered her award."); *see also Invista S.À.R.L. v. Rhodia, SA*, 625 F.3d 75, 85 (3d Cir. 2010) (citing *Thomson-CSF* in background for the proposition that "non-signatories may assume the obligations contained in an arbitration clause where there is a sufficiently close relationship to justify doing so, and the circumstances warrant that result," but ultimately ruling on other grounds).

¶ 22     We also reject Santangelo's contention that Herrera is equitably estopped from asserting that he is not bound by Touchstone's arbitration obligation. He has not "knowingly exploited" the Touchstone-Santangelo fee agreement by claiming direct benefits from, enjoying rights under, or seeking to enforce other provisions of it for his own benefit. *See Rugby Union*, ¶ 38. Any benefits Herrera received because of his representation of Touchstone in the arbitration are simply too indirect to estop him

12

from disclaiming the arbitrator's authority to impose sanctions against him under Touchstone's arbitration obligation.

¶ 23    Santangelo advances no other theory for binding Herrera to the Touchstone-Santangelo fee agreement, and we see no other *Rugby Union* exception as applicable under the facts of this case. *See Rugby Union,* ¶ 31 ("[T]he signatory must establish one of the recognized legal or equitable bases to compel the nonsignatory to arbitrate."); *compare Bak v. MCL Fin. Grp., Inc.,* 88 Cal. Rptr. 3d 800, 806 (Ct. App. 2009) (upholding arbitrator's sanctions award against party's attorney because, in part, the attorney was the party's agent), *and Bigge Crane & Rigging Co. v. Docutel Corp.,* 371 F. Supp. 240, 246 (E.D.N.Y. 1973) (upholding arbitrator's sanctions award against nonparty principal of agent-signatory to an arbitration agreement), *with Rugby Union,* ¶ 36 ("The agency exception to the general principle that a party cannot be required to arbitrate any dispute that it has not agreed to arbitrate is premised on traditional principles of agency law.  Under those principles, an agent may bind a principal to a contract.  A principal, however, cannot bind an agent.").  Other cases Santangelo cites for binding

Herrera are inapposite.[5]  *See First Pres. Cap. v. Smith Barney, Harris Upham & Co.*, 939 F. Supp. 1559, 1567 (S.D. Fla. 1996) (motion for sanctions directed against party to arbitration agreement); *Pisciotta v. Shearson Lehman Bros.*, 629 A.2d 520, 524 (D.C. 1993) (same).

¶ 24    We therefore conclude that the Touchstone-Santangelo fee agreement did not bind Herrera to the arbitrator's authority because Herrera was a nonparty to that agreement and did not fall within any of the *Rugby Union* exceptions.  *See MCR of Am., Inc. v. Greene*, 811 A.2d 331, 343-44 (Md. Ct. Spec. App. 2002) (vacating sanctions award against a party's attorney because attorney was not bound by the parties' arbitration agreement).

---

[5] To the extent out-of-state cases have concluded that the terms of the parties' arbitration agreement can authorize an arbitrator to sanction a party's attorney *without* some basis existing in contract or agency law to bind the attorney to that agreement, we disagree with their conclusions.  *See Polin v. Kellwood Co.*, 103 F. Supp. 2d 238, 264-67 (S.D.N.Y. 2000) (*Polin I*) (reasoning, in part, that arbitration panel had authority to sanction nonparty attorney because the parties' agreement "g[ave] the panel broad remedial power, and provid[ed] that the panel 'may grant any remedy or relief that the arbitrator deems just and equitable, including any remedy or relief that would have been available to the parties had the matter been heard in court'"), *aff'd*, 34 F. App'x 406 (2d Cir. 2002).

### 2. Herrera Did Not Personally Agree to the Arbitrator's Authority to Impose Sanctions

¶ 25    We also reject Santangelo's argument that Herrera personally agreed to arbitrate attorney-sanctions disputes.

¶ 26    On this issue, the district court concluded that Herrera "voluntarily agreed to the arbitrator's authority under Colorado law twice" when he (1) entered his appearance as counsel in the arbitration and (2) expressly agreed at the preliminary hearing that Colorado law and the Rules of Civil Procedure would apply to the arbitration proceedings. In so agreeing, the court ruled that Herrera "bound not only his client but also himself to the rule of the arbitrator," and, "[t]herefore, he (like his client) could be sanctioned" under Rule 11 or section 13-17-102.

¶ 27    As an initial matter, Santangelo appears to contend that the trial court found that Herrera agreed that Colorado law applied to him individually — as well as in a representative capacity. To the extent the court did so, we find no record support for this finding. *See Albright v. McDermond*, 14 P.3d 318, 322 (Colo. 2000) ("In reviewing a breach of contract case, we defer to the trial court's findings of fact if the record supports them, and we review its

conclusions of law de novo."). Rather, the arbitrator's report merely memorialized that Colorado law applied to the proceedings; the arbitrator later found that Herrera only agreed to the application of Colorado law on Touchstone's behalf; and, in determining the proper parties for the sanctions motion, the arbitrator specifically stated that sanctions apply to Herrera "by virtue of his role as counsel for Touchstone and not in his individual capacity."

¶ 28 Having rejected Santangelo's contention, we do not see Herrera's appearance as counsel for Touchstone, his agreement on behalf of Touchstone that Colorado law would apply to the arbitration, or both, as forming an enforceable agreement to arbitrate. *See City & Cnty. of Denver v. Dist. Ct.*, 939 P.2d 1353, 1361 (Colo. 1997) ("As a general rule, courts should follow state law principles governing contract formation to determine whether the parties agreed to submit an issue to alternative dispute resolution."); § 13-22-206(1) ("An agreement contained in a record to submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable, and irrevocable . . . ."); *see also E-21 Eng'g*, 252 P.3d at 39 ("Although the CUAA requires that an arbitration agreement be

16

'contained in a record,' it does not specifically require that the written instrument be signed by either or both parties."). Neither of these actions satisfies the elements of a contract formed between Herrera and Santangelo to arbitrate the issue of sanctions. *See Lane v. Urgitus*, 145 P.3d 672, 677 (Colo. 2006) ("In determining whether the parties have agreed to submit the issue in question to arbitration, we follow state law principles governing contract formation.").

¶ 29     In summary, we conclude that no agreement bound Herrera to arbitrate the issue of sanctions against him in an individual capacity.

¶ 30     Nonetheless, this is not the end of our inquiry. While "[t]he powers of an arbitrator derive from the arbitration agreement," *Magenis*, 187 P.3d at 1224, federal cases have entertained the possibility — which Santangelo urges us to adopt — that, notwithstanding the lack of an agreement binding nonparty attorneys, arbitrators possess "inherent authority" to sanction attorneys appearing before them as a part of their "obligation to protect the forum." *InterChem Asia 2000 Pte. Ltd. v. Oceana Petrochemicals AG*, 373 F. Supp. 2d 340, 358 (S.D.N.Y. 2005)

(quoting *Polin v. Kellwood Co.*, 132 F. Supp. 2d 126, 134 (S.D.N.Y. 2000) (*Polin II*)).

¶ 31     We thus turn to examine whether the arbitrator has authority to sanction an arbitrating party's attorney, regardless of whether the attorney is personally subject to an agreement to arbitrate the issue of sanctions.

### C.     Arbitrators Have No Inherent Authority to Sanction a Party's Attorney

¶ 32     Santangelo argues, as it did before the arbitrator, that the arbitrator has the authority to craft appropriate sanctions for an attorney's misconduct due to the tribunal's inherent power to regulate the proceeding before it.  We disagree.

¶ 33     Santangelo is correct regarding the well-settled principle that "[c]ourts have inherent authority to issue orders that are necessary for the performance of judicial functions." *People v. McGlotten*, 134 P.3d 487, 489 (Colo. App. 2005); *see Halaby, McCrea & Cross v. Hoffman*, 831 P.2d 902, 907 (Colo. 1992) ("The inherent powers which courts possess consist of all powers reasonably required to enable a court to efficiently perform its judicial functions, to protect

its dignity, independence, and integrity, and to make its lawful actions effective.").

¶ 34      However, it does not follow that, because *judicial* tribunals possess inherent authority to regulate the proceedings before them, all *quasi-judicial* tribunals possess the same authority. After all, the powers of an arbitrator arise primarily from contract, while those of courts arise from the judiciary's constitutional role, statutory authority, and historical practice. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 47 (1991); *InterChem Asia*, 373 F. Supp. 2d at 358 (concluding that arbitrators do not have inherent sanction authority because "finding that the Arbitrator had inherent authority to sanction [an arbitrating party's attorney] would directly contradict the principle that an arbitrator's authority is circumscribed by the agreement of the parties"); *c.f. Munich Reinsurance Am., Inc. v. ACE Prop. & Cas. Ins. Co.*, 500 F. Supp. 2d 272, 275-76 (S.D.N.Y. 2007) (concluding that disqualification of an attorney for an alleged conflict of interest was not within arbitrator's authority to decide as that function "has historically been a matter for judges and not arbitrators because it requires an application of substantive state

law regarding the legal profession and results in an enforceable judicial order").

¶ 35　　Moreover, we agree with Herrera that no Colorado statute or rule of civil procedure confers on arbitrators the authority to sanction a party's attorney. *See Seagate Tech., LLC v. W. Digit. Corp.*, 854 N.W.2d 750, 761 (Minn. 2014) (noting that arbitrators may have authority conferred by the legislature). As he argues, Rule 11 and section 13-17-102 only empower "courts" to sanction attorneys, so absent an arbitration agreement incorporating these provisions to which Herrera was bound, they provide no independent, standalone authority for an arbitrator to sanction a party's attorney. *Compare Halaby*, 831 P.2d at 907 (interpreting a previous version of C.R.C.P. 107 that defined "contempt" to include "[m]isbehavior of any person in the presence of . . . an arbitrator while sitting on arbitration" and stating: "Thus, a judge, a master and an arbitrator all have clear authority to impose sanctions for conduct which interferes with the functions of the court"), *with In re Marriage of Leverett*, 2012 COA 69, ¶ 11 (interpreting the current Rule 107 and noting that, because "arbitrator" is not included in

the definition of "court," violation of an arbitrator's order is not "contempt").

¶ 36     Further, we agree with Herrera that no provision of the CUAA explicitly confers on arbitrators the authority to sanction a party's attorney.  The CUAA does grant arbitrators specific statutory powers that can be exercised in arbitration proceedings.  *See* § 13-22-215(1), C.R.S. 2021 (noting that the CUAA confers certain authority upon the arbitrator).  For example, arbitrators can issue subpoenas, authorize depositions, and issue protective orders.  *See, e.g.*, § 13-22-217, C.R.S. 2021.  But the legislature has also specifically limited the bounds of these powers.  *See, e.g.*, § 13-22-217(1) (subpoenas must be enforced via court order); § 13-22-217(4) (arbitrators do not have the power of contempt); § 13-22-217(7) (granting courts the power to enforce subpoenas and discovery-related orders issued by arbitrators).  And while the CUAA authorizes arbitrators to award "reasonable attorney fees . . . if such an award is authorized by law in a civil action involving the same claim or by the agreement of the parties to the arbitration proceeding," § 13-22-221(1), C.R.S. 2021, we do not see this authorization as broad or express enough to apply to an arbitrating

21

party's attorney. Most importantly, nowhere else in these provisions has the General Assembly imbued arbitrators with general powers, particularly against nonparties.[6]

¶ 37    Lastly, we acknowledge a looming concern Santangelo raises in its briefing — that if arbitrators are not permitted to control and protect the arbitration proceedings through the sanction power, then attorneys may be more likely to commit misconduct in arbitration. *See Polin II*, 132 F. Supp. 2d at 134 ("If an attorney were free to disregard and flaunt the authority of the arbitral forum, [the] benefits [of arbitration] would be lost; the interest of . . . courts in following the . . . policy of promoting arbitration as a means of resolving disputes would be frustrated."); *see also Positive Software Sols., Inc. v. New Century Mortg. Corp.*, 619 F.3d 458, 460-63 (5th Cir. 2010) (concluding that courts lack inherent authority to sanction attorneys for their conduct during arbitration); *Teamsters*

---

[6] To the contrary, in enacting the CUAA, the General Assembly declined to enact language contained in the Uniform Arbitration Act that would have authorized arbitrators to "order such remedies as the arbitrator considers just and appropriate under the circumstances of the arbitration proceeding." *Compare* Unif. Arb. Act § 21(c) (Unif. L. Comm'n 2000) (containing quoted language), *with* § 13-22-221, C.R.S. 2021 (containing no such language).

*Loc. Union No. 430 v. Cement Express, Inc.*, 841 F.2d 66, 70 (3d Cir. 1988) (concluding that federal courts lack authority under F.R.C.P. 11 to sanction attorneys for their submissions to arbitration).

¶ 38    But even if valid, other safeguards alleviate his concern. First, going forward arbitrators could ask attorneys appearing before them to explicitly and personally agree to the arbitrator's authority to sanction the lawyers. Second, as happened here, attorney misconduct in arbitration is still subject to regulation by the Colorado Office of Attorney Regulation Counsel. But more importantly in our view, attorneys committing misconduct in arbitration could open the door to the arbitrator sanctioning *their clients*. *See, e.g.*, *Certain Underwriters at Lloyd's London v. Argonaut Ins. Co.*, 264 F. Supp. 2d 926, 944 (N.D. Cal. 2003) (noting that parties may agree by arbitration contract to confer sanction power on the arbitrator); Commercial Arbitration Rules and Mediation Procedures R-58(a) (Am. Arb. Ass'n, amended and effective Oct. 1, 2013) ("The arbitrator may, upon a party's request, order appropriate sanctions where a party fails to comply with its obligations under these rules or with an order of the arbitrator."); *see also* § 13-22-221(1). Either way, we don't see the absence of

23

arbitrator authority to sanction a party's attorney as opening a Pandora's box of attorney misconduct in arbitration.

¶ 39    Importantly, too, there are significant concerns counseling against concluding that arbitrators have authority to sanction nonparty attorneys absent an agreement to that effect. Here, Herrera claims it would be futile for him to challenge the merits of the arbitrator's sanctions award — his factual findings or application of law — because, Herrera argues, the scope of judicial review of that award is so narrow. *See Cabo*, 114 P.3d at 66 ("[A]rbitration awards are not open to review on the merits."). That may be so in Herrera's case, but even if not,

> [w]e are . . . [still] not inclined to accept a broadening of the powers of an arbitrator while our authority to review the exercise of those powers remains narrow. To hold otherwise would grant arbitrators greater power to sanction attorneys by awarding arbitration or attorney's fees than the courts presently enjoy, because the power of arbitrators to do so is less reviewable. That would be an unfortunate result, given that arbitrators are not judges and arbitrations are not trials. If arbitrators' powers are to be so expanded, it should be done expressly by rule or statute, not inferentially by this Court.

*Greene*, 811 A.2d at 344.

24

¶ 40    Ultimately, arbitration in Colorado is largely a function of statutory and contract law, and an arbitrator can only act within the scope of an agreement between the parties, with authority granted by that agreement or by law.  We conclude that arbitrators have no authority — either inherent to the arbitration tribunal or conferred by Rule 11, section 13-17-102, or the CUAA — to sanction a party's attorney absent an agreement that provides otherwise, and to which that attorney is bound.

## III.    Conclusion

¶ 41    We conclude that the arbitrator exceeded his authority in sanctioning Herrera personally, as (1) Herrera was not bound to any agreement to arbitrate the issue of sanctions against himself; and (2) the arbitrator otherwise possessed no authority to do so.  The district court therefore erred in denying Herrera's motion to vacate and instead confirming the award.  We reverse the district court's judgment accordingly and remand with instructions to vacate the arbitration award against Herrera.

JUDGE NAVARRO and JUDGE LIPINSKY concur.